FILED

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA** 9° AUG 25  ⚡ 9: 37
**SOUTHERN DIVISION**

U.S. DISTRICT COURT
N.D. OF ALABAMA

**NANA FORD,**

    Plaintiff

vs.                                     CIVIL ACTION NO. CV 98-J-2124-S

**JEFFERSON COUNTY BOARD**
**OF EDUCATION,**

    Defendant.

ENTERED

AUG 2 5 1999

**MEMORANDUM OPINION**

Currently pending before the court is the defendant Jefferson County Board of

Education's motion for summary judgment (doc. 15), to which Plaintiff filed a brief in

opposition (Plaintiff's response to defendant's motion for summary judgment).

Thereafter, defendant filed a reply to Plaintiff's response (doc. 40). Both parties have also

filed evidentiary submissions in support of their respective positions, including

supplemental affidavit of Ellen Harris (doc. 41). The court has reviewed the motion, the

memoranda of law and the evidentiary submissions of the parties.

**I. PROCEDURAL HISTORY**

Plaintiff commenced this action on August 20, 1998 by filing a complaint (doc.1)

42

alleging the defendant discriminated against her in violation of the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101, *et seq.* , and failed to fulfill its

obligations to her under the Family and Medical Leave Act ('FMLA"), 29 U.S.C. §2601

*et seq.*.  Plaintiff rests her allegations on claims that Defendant did not grant her two

months' leave in response to a note from her doctor stating that due to her health she

should be permitted two months medical leave.  Additionally, she claims Defendant failed

to notify her of her "right to take FMLA leave upon learning of her serious medical

condition." Plaintiff further alleged in her complaint that defendant breached its contract

with her under state law, however state law claims were dismissed upon motion of the

Plaintiff on July 14, 1999 (doc. 38). Neither party having requested oral argument, this

court considered this motion upon the pleadings, briefs and evidentiary submissions.

Having considered all of the foregoing, the court concludes that the motion for summary

judgment is due to be granted on all counts of the complaint.

This court has jurisdiction of this case pursuant to 42 U.S.C. § 12101 *et seq,* 29

U.S.C. §2601 *et seq.* and 28 U.S.C. § 1331.

## II. FACTUAL BACKGROUND

In the light most favorable to the Plaintiff, the facts of this case are as follows: The

Plaintiff  holds a Bachelor of Science degree in Elementary Education from Auburn

University and a Master's Degree in Elementary Education from the University of

-2-

Alabama.  Exh. D to Affidavit of Ellen Harris.  Plaintiff is certified by the Alabama State

Department of Education to teach all subjects in grades one through eight.  Depo. of

Plaintiff at 6. Plaintiff began working for the defendant in 1985 as an elementary school

teacher at McAdory School.  Depo. of Plaintiff at 12- 13. She worked for the Fairfield

School System for a year, the 1986-87 school year, but returned to McAdory Elementary

School in the Fall of 1987.  Depo. of Plaintiff at 15.  The Plaintiff worked at McAdory

until May of 1993, at which time she received a position as a sixth grade teacher at

Pittman Middle School beginning the Fall of 1993. Depo. of Plaintiff at 17-19.  During

the 1993-94 school year, Plaintiff was assigned to the sixth grade reading program in

Room 107.  Several teachers at the school would tell her "You're in the sick room" but it

did not bother her, because she had not been sick. Depo. of Plaintiff at 41- 42.  Plaintiff

became pregnant with her second child that year.  During her pregnancy she developed

one slight case of asthma and pneumonia which were treated with prednisone by her

obstetrician.  The condition subsided.  Depo. of Plaintiff at 33.

Plaintiff had her second child two days into the 1994-95 school year, took leave

and returned to school the beginning of October 1994.  Depo. of Plaintiff at 41.

Thereafter the Plaintiff began developing frequent headaches, watery eyes and a runny

nose.  Depo. of Plaintiff at 42.  Plaintiff also developed bronchitis during this same

period.  Depo. of Plaintiff at 43- 44.  On or about that time she, another teacher and

Plaintiff's students noticed a smell in her room.  Depo. of Plaintiff at 47.  At the time this

-3-

occurred Plaintiff had worked in that room for one full year and part of a second. Depo.

of Plaintiff at 48. Plaintiff began documenting the problems, and reported them to her

principal. Depo. of Plaintiff at 49-50. The principal promptly requested that a Board

maintenance technician, Wayne Giles, come to the school and inspect the room. Depo. of

Plaintiff at 50 and Depo. of Giles at 12-13. Giles found that carbon monoxide had

escaped into the room through a loose seal in the heating and cooling system. Depo. of

Plaintiff at 50.   He stated  to Plaintiff that he felt like that was what had caused her

headaches and "everything" and that it had been fixed. Depo. of Plaintiff at 50. After

the repair, no smell was noticed by Plaintiff. Depo. of Plaintiff at 51. Plaintiff continued

to suffer from bronchitis. Her condition would get better when she took her medication,

but her bronchitis would recur. Depo. of Plaintiff at 52.  Even though Plaintiff at this

time began suspecting that there was a connection between her condition and the room,

she did not share this suspicion with her doctor. Depo. of Plaintiff at 52-53.

During this same period, Plaintiff was diagnosed with mitral valve prolapse.

Depo. of Plaintiff at 53-56. The medication initially prescribed for this condition

exacerbated Plaintiff's asthma, but was eventually changed. Depo. of Plaintiff at 56. The

Plaintiff was well during the entire summer following the 1994-95 school year. Depo. of

Plaintiff at 64.

The Plaintiff was assigned to work in the same room, Room 107, when she

returned in the beginning of the 1995-96 school year. After several weeks, her chest and

-4-

left side started hurting and she returned to Dr. Veren, her obstetrician, for medical treatment.   Depo. of Plaintiff at 64.

The record is unclear as to whether or not Plaintiff had any other incidents of asthma, bronchitis or pneumonia in that school year.

In September of 1996 [which would be the 1996-97 school year] Plaintiff became sick again and Dr. Veren referred the Plaintiff to a pulmonary specialist, Dr. Russell Beaty.   Depo. of Beaty at 10.   When Plaintiff reported to Dr. Beaty in September of 1996, she was diagnosed with pneumonia in her left lung.   Depo. of Plaintiff at 65. Plaintiff's pneumonia responded well to antibiotics. Depo. of Plaintiff at 66. On or about October 14th, Plaintiff had a second bout with pneumonia.   Depo. of Plaintiff at 67. Plaintiff was hospitalized and treated with IV antibiotics and had breathing treatments. Depo. of Plaintiff at 69.   She was discharged from the hospital on October 17th, and returned to school.   Following her second bout with pneumonia, Plaintiff's physician, Dr. Russell Beaty, wrote Pittman principal Joseph Redcross a letter in which he stated his concern regarding a possible environmental agent in Plaintiff's work area causing her respiratory difficulties.   Depo. of Wright, Exh. 3.   Dr. Beaty stated that although he did "not have... any definitive evidence for a specific agent"... he was concerned about molds and fungi.

He further stated: "I will continue to work with Ms. Ford in hopes that we can improve her breathing, but she ultimately may require a transfer from this facility to

reduce her exposure. I understand that some testing for environmental pollutants is planned. I appreciate these efforts. As more data is available, I will keep you updated on my findings." Depo. of Wright, Exh. 3.

After Plaintiff's second bout with pneumonia, she asked Principal Redcross for permission to "travel" from room to room, in vacant classrooms, so she could determine "if it [the cause of her respiratory problems] was in the classroom." She received permission and started "traveling." Depo. of Plaintiff at 70-71.

However, two weeks later Plaintiff developed a third case of pneumonia (Depo. of Plaintiff at 71). She was again hospitalized, and following her hospitalization her physician requested of Principal Redcross, that Plaintiff be allowed to recover away from the school for the remainder of the calendar year. Depo. of Wright, Exh. 2. To accommodate this request, Plaintiff was granted both basic medical leave and catastrophic leave. Affidavit of Harris, pp. 1-2, Exhibits A-C.

Plaintiff returned to work in January of 1997 following her leave. She was assigned to a much larger room on the eighth grade hall because "the Health Department had said that Pittman had poor ventilation" Depo. of Plaintiff at 76.[1] From January 1997 until the end of the school year in May of 1997, Plaintiff had only one slight case of

---

[1]Plaintiff was satisfied with this solution and considered it reasonable (Depo. of Plaintiff at 77).

bronchitis.  Depo. of Plaintiff at 78.[2]

During the period from January through May of 1997, Plaintiff applied for a

transfer to McAdory Elementary School.  Affidavit of Harris at 2.  Plaintiff's request for

transfer to McAdory was dated March 21, 1997, and stated as reasons for requesting a

transfer:  "To return to an elementary environment; to become more involved with the

mentor program and student teachers; to locate closer to home."  Affidavit of Harris, Exh.

D.[3] Plaintiff was interviewed by Harold Jackson, Principal of McAdory Elementary

School and the Assistant Principal, Carol Johnson.  Depo. of Plaintiff at 106-107.

Plaintiff did not receive a position at McAdory, initially because there was no position

available, and later because Plaintiff was not qualified for the positions which did open

up.  Depo. of Jackson at 23, 38-39.

On March 28, 1997, her medical records reveal "remarkable clearing of her

chronic right middle and lingular infiltrates....  She is really doing better... from the

---

[2]Wayne Giles, electrician for defendant's Maintenance Department, testified that he had
knowledge of environmental problems at Pittman since 1993 (Depo. of Giles at 10).  Prior to
Plaintiff being employed at Pittman every chamber in every furnace had been torn out and
replaced so that carbon monoxide would not leak (Depo. of Giles at 11-12, 22-23).  However,
there were still complaints about the quality of the air in Plaintiff's room [Room 107] (Depo. of
Giles at 19-20) and Giles recommended that complaining teachers be moved to other classrooms
(Depo. of Giles at 21, 33).  Defendant also worked with the Jefferson County Health Department
in an attempt to ascertain the source of Plaintiff's respiratory difficulty (Depo. of Redcross at 44-
48).  To improve ventilation, monthly changing of filters was recommended and said
recommendation was followed by defendant (Depo. of Redcross at 47).

[3]A request for transfer is sent to the principal of the school to which the teacher seeks
transfer.  All people who have submitted a request for a transfer are then interviewed by him
(Depo. of Jackson at 12).

standpoint of her asthma.... Many of her symptoms which are worsening are related to

depression. There is a history of depression in her family and she is not accustomed to

the kind of strain present now between she and her husband." Depo. of Beaty, Exh. 1.

Plaintiff's physician prescribed antidepressant medication for her at this time. *Id.* When

Plaintiff did not receive the transfer requested, she contacted Superintendent Bruce

Wright and her union representative Steve Burns. Depo. of Plaintiff at 118-119, 191-194.

Plaintiff did not believe she was denied the transfer to McAdory for any improper reasons

Depo. of Plaintiff at 119.

Three days before the beginning of the 1997-98 school year Plaintiff was called

about an interview for a position at Pleasant Grove Elementary School.[4]  Plaintiff

declined the interview because changing jobs that close to the beginning of the school

year was too stressful. Depo. of Plaintiff at 112-115, 126.

Plaintiff returned to Pittman at the beginning of the 1997-98 school year and with

very short notice was assigned to teaching sixth graders in the sixth grade hall. Depo. of

Plaintiff at 88. However, Plaintiff was not assigned to the room where she had

experienced her respiratory problems [Room 107]. Rather, she was assigned a different

room at the other end of the hall. Depo. of Plaintiff at 90. Although Plaintiff questioned

the short notice she had been given, she felt that she should not "fight the situation."

Depo. of Plaintiff at 87. She very much enjoyed teaching sixth graders. Depo. of

---

[4]Another school in the Jefferson County School System.

-8-

Plaintiff at 89). Plaintiff did not ever ask Principal Redcross if she could teach sixth

graders in the eighth grade hall, nor did she raise any health-related issues or concerns

when this reassignment took place. Depo. of Plaintiff at 88, 89.[5]

On August 22, 1997, Plaintiff suffered another case of pneumonia, requested and

was granted leave to go to the doctor, and was diagnosed with pneumonia in her right

lung. Depo. of Plaintiff at 92-93. Plaintiff never returned to Pittman. Depo. of Plaintiff

at 94.

She requested of her physician that he write a letter indicating that he felt she

should not teach at Pittman as it would be detrimental to her health. Depo. of Beaty,

Exh. 1. Dr. Beaty wrote such a letter to Plaintiff's attorney, Gail Gear. Depo. of Beaty,

Exh. 1. In his letter to Ms. Gear, Dr. Beaty reviewed Plaintiff's medical history, opined

that Plaintiff suffered from occupational asthma complicated by recurrent episodes of

bronchitis and pneumonia and recommended that she not return to Pittman School.[6]

Plaintiff then requested family leave and catastrophic leave. Depo. of Plaintiff at

---

[5]Principal Redcross felt safe in reassigning Plaintiff to the sixth grade hall, because her complaints had related specifically to Room 107, not the rest of the hall (Depo. of Redcross at 96).

[6]Beaty defined occupational asthma as "asthma that has been triggered by some agent which the exposure to that agent was on the job" (Depo. of Beaty at 76). Beaty further distinguished infectious pneumonia caused by bacteria, and pneumonia from non-infectious agents, such as dust and environmental contaminants. It was his opinion, at least in 1996 that Plaintiff's pneumonia were bacterial because they responded to antibiotics (Depo. of Beaty at 11-12). Dr. Beaty did not do any tests to determine whether or not Plaintiff's pneumonia was indeed related to Pittman school (Depo. of Beaty at 20).

95-96. On September 16, 1997, Plaintiff was notified by Board Director of Certificated

Personnel Ellen Harris, that she was not eligible for family medical leave but was eligible

for unpaid sick leave. Affidavit of Harris at 2, Exh. E. Plaintiff was not eligible for

family medical leave because Plaintiff had not worked 1,250 hours the preceding year.

Affidavit and Supplemental Affidavit of Harris at 1-2. Ms. Harris informed Plaintiff that

it was critical that she complete the appropriate paper work for medical leave of absence

as soon as possible in order to insure her continuing employment status with Defendant.

She was also notified that Defendant was working on "all options regarding a transfer to a

different facility." Affidavit of Harris, Exh. E.

Shortly after September 7, 1997, when Harris wrote Plaintiff, Harris learned of a

vacancy at Fultondale Elementary School[7] (Affidavit of Harris at 3). Plaintiff was offered

and accepted a transfer to this vacancy. Id. Although this position did not become

available until October 30, Board Deputy Superintendent Phil Hammonds, authorized

Plaintiff to being work as early as October 7, 1997, so Plaintiff could be restored to pay

role as quickly as possible. Affidavit of Harris at 3.[8]

_____

[7]Another school within the Jefferson County School System.

[8]Defendant engaged a private environmental engineering firm to test the air at Pittman in
September of 1997. The defendant also contacted Jefferson County Health Department a second
time on October 8, 1997, in order to ascertain the origin of Plaintiff's respiratory problems. The
Health Department concluded: "Based upon the survey, we conclude that at this time there is not
a risk to the population working or attending school at Pittman Middle School. However, it is
possible that the two teachers [Plaintiff and Kaye Shell, another teacher] expressing symptoms of
illness may be affected by the school. Some people develop a higher sensitivity to various
irritants in the air which the bulk of the population tolerate quite well. This may be the case with

Although Plaintiff was already transferred to Fultondale Elementary School effective October 7, 1997, Plaintiff's physician wrote another letter dated November 14, 1997 "To Whom it May Concern" which was faxed to Plaintiff's current attorneys. Dr. Beaty wrote that letter because Plaintiff "felt as though the school [Pittman] was not working with her at that point to get her another position. Depo. of Beaty at 46.

Since teaching at Fultondale almost two years, Plaintiff has had to use her inhaler only once, has not had bronchitis, and only one case of pneumonia. Depo. of Ford at 142.

Plaintiff recently resigned her employment with defendant to take a position at Creekview Elementary School in the Shelby County School System. Supplemental Affidavit of Harris at 2.

---

these two teachers. In light of the fact we do not have any data from biological air sampling, it cannot be determined if mold and fungal counts are higher than "normal." A simple way to determine if the school building is the cause of these two teachers illness would be to transfer them to another school and see if their illness goes away, then Pittman school was the source of their illness. If their symptoms persist, then these two individuals have a higher than normal sensibility to some irritant found in all locations."

(Affidavit of Sisk, Exh. 4).

The report of Dr. Ronald Hunsinger, regarding the results of the environmental air testing performed by the private engineering firm hired by defendant reveal that "typical irritant air pollutants were absent in the area where the subjects [two teachers] were stationed. (... There were a relatively low concentration of bacteria making it unlikely that the source of the problem was bacterial in nature. Some molds can however be allergy provoking. The health records of the [two teachers] verify a sensitivity to molds and a variety of plant material, which may explain why these individuals are affected while others are not.... Finding the exact sources of the subjects' allergy problems is a medical issue. Very much akinned (sic) to finding the proverbial "needle in a haystack." Thus, although not necessarily associated with the scope of the problem as described to me, other potential allergy sources might include: dust, dust mites, volatile organic compounds [and] ozone."

-11-

## III.  STANDARD FOR EVALUATING SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact.  *Id*. at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.P. 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical

-12-

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for

trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at

249. The non-movant must "demonstrate that there is indeed a material issue of fact

precluding summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th

Cir. 1991). A factual dispute regarding a non-material issue will not preclude the

defendant from succeeding on a motion for summary judgment. *Brown v. American*

*Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

On motions for summary judgment, the court is to construe the evidence and

factual inferences arising therefrom in the light most favorable to the nonmoving party.

See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will

identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). All "reasonable doubts" about the facts and all justifiable

inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d

1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v.*

*Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir. 1987).

A dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted. *Id*. at

249. The basic issue before the court on a motion for summary judgment is "whether the

-13-

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 47 U.S. at 251-252.

## IV. DISCUSSION

A.    The ADA Claim

The ADA provides that no covered employer shall discriminate against a "qualified individual with a disability because of the disability of such individual with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  To establish a prima facia case under the ADA, the Plaintiff must show that (1) she has a disability; (2) she is a qualified individual; and (3) she was discriminated against because of the disability. *Swain v. Hillsborough County School Board*, 146 F.3d 855, 857 (11th Cir. 1998); *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132 (11th Cir. 1996).  In addition, the Plaintiff must show that the employer had either actual or constructive knowledge of the disability or considered the employee to be disabled. *Morisky v. Broward County,* 80 F.3d 445, 448 (11th Cir. 1996).

To be a qualified individual with a disability, Plaintiff must show: (1) that she has a disability; (2) that she can perform the essential functions of her position despite her

-14-

disability; or (3) that she can perform the essential functions of her job with a reasonable accommodation for her disability. *Holbrook v. City of Alpharetta, Georgia*, 112 F.3d 1522, 1526 (11th Cir. 1997). If Plaintiff can show that she is a qualified individual with a disability, she must then show that defendant discriminated against her because of her disability. *Holbrook*, 112 F.3d at 1526.

The ADA defines disability as (a) a physical or mental impairment that substantially limits one or more major life activities of such individual; or (b) a record of such an impairment or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Plaintiff argues that she falls within the first category of disability as the Plaintiff states that "she has a disability which substantially limits her major life activities." Plaintiff's Opposition at 14. Plaintiff argues that the major life activities from which she is limited include that she is no longer able to participate in recreational activities such as jazzercise and mountain climbing and she is unable to work or breathe because of her respiratory problems.

The United States Supreme Court has held that an analysis under subsection (A) of the disability definition has three parts. These are (1) whether the Plaintiff had a physical impairment; (2) identification of the life activity upon which Plaintiff relies and determine whether it constitutes a major life activity under the ADA; and (3) whether the impairment substantially limits the major life activity. *Bragon v. Abbott*, 118 S.Ct. 2196, 2202, 524 U.S. 624, 141 L.Ed.2d 540 (1998).

-15-

Thus, to establish a prima facia case and survive summary judgment, the Plaintiff

must present sufficient evidence to create a genuine issue of material fact as to whether

her physical impairments substantially limit her ability to partake in a major life activity.

*Swain*, 146 F.3d at 857; *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 911 (11th

Cir. 1996), *cert. denied*, 118 S.Ct. 630, 139 L.Ed.2d 610 (1997) ("Merely proving the

existence of a physical impairment, without addressing any limitation on major life

activities, is not sufficient to prove disability under the Act"). The EEOC defines major

life activity as, "functions such as caring for oneself, performing manual tasks, walking,

seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i)

(1996). "Substantially limited" is defined by the EEOC for ADA purposes to mean:

> (i)    Unable to perform a major life activity that the average person
>        in the general population can perform; or
> (ii)   Significantly restricted as to the condition, manner or duration
>        under which the average person in the general population can
>        perform that same major life activity. 29 C.F.R.
>        §1630.2(j)(1)(1996). In deciding whether a major life activity
>        has been substantially limited, the EEOC provides several
>        factors to consider:
> (i)    The nature and severity of the impairment;
> (ii)   The duration or expected duration of the impairment; and
> (iii)  The permanent or long term impact, or the expected
>        permanent or long term impact of or resulting from the
>        impairment.

29 C.F.R. § 1630.2(j)(2) (1996)

Further, whether or not Plaintiff's impairment "substantially limits" one or more

major life activities must be made with reference to the mitigating measures [she]

employs. *Murphy v. United Parcel Services, Inc.*, 97-1992 (decided June 22, 1999).

See also *Sutton v. United Air Lines*, 97-1943 (decided June 22, 1999). "A person whose

physical or mental impairment is corrected by mitigating measures still has an

impairment, but if the impairment is corrected it does not "substantially limit" a major life

activity." *Sutton*.

Although the evidence shows that Plaintiff has had respiratory problems,[9] which

have substantially limited her ability to work and breathe at Pittman, such problems only

exist when she is working at that school. The evidence shows that every time she was

away from the school, such as summers or when on extended leave, her symptoms and

her conditions improved. Depo. of Beaty, Exh. 1, letter dated September 1, 1997 to Gail

Gear. Her medical records also reflect that when her condition was medicated, Plaintiff's

symptoms subsided and she responded well.

In order to show that she is substantially limited in the life activity of working,

Plaintiff must demonstrate that she is significantly restricted in her ability to perform

either a class of jobs or a broad range of jobs in various classes as compared to the

average jobs in having comparable training skills and abilities. *Stewart v. Happy

Herman's Chesire Bridge*, 117 F.3d 1278 (11th Cir. 1997). Plaintiff's burden is greater

than simply showing that she is unable to perform a particular job. *Twain v. Hillsborough*

---

[9]No one has identified the actual source of Plaintiff's respiratory problems, although her
doctor defines her illness as occupational asthma exacerbated by yet unidentified environmental
agents at Pittman (Depo. of Beaty, Exh. 1).

*County School Bd.*, 146 F.3d 855 (11ᵗʰ Cir. 1998); *see also Pritchard v. Southern Co.*

*Servs.*, 92 F.3d 1130, 1133 (11ᵗʰ Cir. 1996); 29 CFR 1630.2(j)(3)(i). An employee who

"merely cannot work on a particular job at a particular place(s) is not considered to be

disabled." *Patrick v. Southern Company Servs.*, 910 F.Supp. 566 (N.D.Ala. 1996). For a

case with facts very similar to the facts in this case *see Mobley v. Board of Regents of*

*University System of Georgia*, 924 F.Supp. 1179 (S.D. Ga. 1996). A person who claims

to be restricted from a particular job is not disabled under the ADA. *Sutton*.

Additionally, Plaintiff's respiratory problems respond to mitigating measures, such

as removal from Pittman school environment and medication and thus is not a disability

under the ADA, *Sutton, Murphy*.

Plaintiff has not proven that her respiratory problems impair her other than in the

Pittman school setting. Thus, she has failed to meet her prima facie burden of

establishing that the claimed impairment has substantially limited a major life activity

within the meaning of the ADA.[10]

B.     The Reasonable Accommodation Claim

While the Plaintiff also alleges that the defendant failed to make reasonable

accommodations for the Plaintiff, the court can find no evidence to support this claim.

---

[10]Plaintiff also contends that the major life activity of her breathing is substantially impaired. The analysis above is equally applicable to this allegation. Plaintiff's breathing problems are related to the Pittman School setting. Since being transferred to Fultondale, she has only used her inhaler once (Depo. of Plaintiff at 142). Not being able to climb mountains or doing jazzercise has any direct bearing on Plaintiff's job duties.

Discrimination under the ADA includes "not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. §12112(b)(5)(A). To state a prima facie case of disability discrimination, a Plaintiff must show (1) that she has a disability; (2) that, with or without reasonable accommodations she can perform the essential functions of the position she holds; and (3) that she was discriminated against because of her disability. *Terrell v. U. S. Air*, 132 F.3d 621, 624 (11th Cir. 1998).

Since Plaintiff has failed to show that she has a disability as contemplated by the ADA, the Court need not reach the issue of "reasonable accommodation" because employers have no duty to accommodate an employee, if the employee is not disabled under the ADA. *Swain v. Hillsborough County School Bd.*, 146 F.3d 855, 858 (11th Cir. 1998); *Patrick*, 910 F. Supp. at 570.

Assuming *arguendo* that Plaintiff had met her burden, she still fails to show that defendant failed to provide her with reasonable accommodations. Plaintiff has the burden of identifying an accommodation that would allow a qualified individual to perform the job. *Stewart v. Happy Herman's Chesire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997). Additionally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed. *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1394 (11th Cir. 1999) (citing 29 C.F.R. pt 1630 App. § 1630.9)). When an accommodation is requested, the employer may then provide an accommodation

-19-

which is *reasonable* in the sense that it allows the employee to perform the essential functions of her position. *Stewart* at 1285. The employee is not entitled to dictate or demand a specific accommodation or to receive the accommodation of her choice. *Id.*

The evidence shows that when Plaintiff first brought her suspicion of a relationship between her respiratory problems and Pittman school to Defendant's attention, Defendant called its maintenance department to inspect the premises, repair and adjust mechanical equipment, and replace air filters. Depo. of Redcross at 19, 21, 27, 37-39, 43-47; Depo. of Plaintiff at 50. The gas company was called to investigate and repair potential problems. Depo. of Redcross at 19-20. An investigation was requested by the Jefferson County Health Department. Depo. of Redcross at 21-24, 27. Plaintiff was permitted to "travel" and to a hall away from Room 107. Depo. of Plaintiff at 70-71, 76, 77, 86-87. Eventually, Plaintiff was granted catastrophic leave from November 1996 until January 1997. Affidavit of Harris at 2. Indeed, Plaintiff was offered an interview at another school, which Plaintiff declined. Depo. of Plaintiff at 113-114. When Plaintiff got sick again in the beginning of School Year 1997-1998, Defendant hired a private independent environmental engineering firm to attempt to determine whether any environmental agents were present which could trigger Plaintiff's illness and again consulted the Jefferson County Health Department. Affidavit of Sisk with Exhibits. Plaintiff's status of employee was continued. Affidavit of Harris at 2. Plaintiff was transferred to another school within approximately one month of her physician's letter that he had determined

-20-

that she had occupational asthma, and was reassigned to another school before the official

vacancy of that position. Affidavit of Harris at 3. Failure to accommodate Plaintiff to the

school of her choice, McAdory Elementary School, is not failure to provide a reasonable

accommodation; *Willis v. Conopco*, 108 F.3d 282 (11th Cir. 1997); *Terrell v. U.S. Air*, 132

F.3d 621 (11th Cir. 1998); *Stewart v. Happy Herman's Chesire Bridge, Inc.,* 117 F.3d

1278 (11th Cir. 1997). Further, Plaintiff made her request to be transferred to McAdory at

a time when she was well and did not state in her request for transfer that she was seeking

the transfer for medical/respiratory reasons. Affidavit of Harris, Exh. D; Deposition of

Plaintiff at 78. Finally, the first letter received by Defendant from Plaintiff's doctor

recommending Plaintiff's permanent removal from Pittman was not received by the

defendant until *after* she left the school. Depo. of Beaty, Exh. 1. Plaintiff was transferred

to another school approximately one month thereafter.

Although it is not necessary to reach a decision regarding this issue, this Court

concludes that the undisputed evidence shows that defendant did not fail to provide

Plaintiff with reasonable accommodation under the ADA.

C.    The FMLA Claim

Plaintiff has alleged violations of the Family Medical leave Act of 1993 (FMLA),

29 U.S.C. § 2601, *et seq.*

An employee must be an "eligible employee" before becoming covered by its

provisions. 29 C.F.R. § 825.110. An "eligible employee" is one who has worked at least

1,250 hours during the previous twelve months and has been employed at a work site

where there are at least fifty or more employees within a seventy-five mile radius of the

work site.  29 U.S.C. § 2611(2)(A); 29 U.S.C. § 2611(2)(B)(ii).  The defendant's records

of Plaintiff's attendance at work show that Plaintiff worked 140 days during the twelve

months preceding August 22, 1997, when she left Pittman.  Supplemental Affidavit of

Harris at 2.  Using Plaintiff's calculation of 8.5 hours per workday, this only adds up to

1,190 hours.  Thus Plaintiff was not an "eligible employee" for purposes of her FMLA

claim.

**CONCLUSION**

Plaintiff having dismissed all other claims of her complaint, and in consideration

of the foregoing, the Court finding no evidence that Plaintiff is suffering from a disability,

and no evidence that Defendant failed to provide her reasonable accommodations, and no

evidence that she was eligible pursuant to FMLA, the Court can find no genuine issue of

material fact left for trial.

As such, the Defendant's motion for summary judgment is hereby **GRANTED** on

all counts of the complaint not heretofore dismissed by Plaintiff herself.

This case is dismissed with prejudice.

**DONE** and **ORDERED** this ___25___ day of August, 1999.

_____

Inge P. Johnson
United States District Judge

-22-
